UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
FAIGIE EHRENFELD, *on behalf of herself and all*     Docket No.:
*Individuals similarly situated*,

                                                  Plaintiff,         **COMPLAINT AND DEMAND**
                                                                 **FOR TRIAL BY JURY**

   -against-

WELLS FARGO BANK, N.A.
                                                  Defendant.
-----------------------------------------------------------------------X

Plaintiff, Faigie Ehrenfeld, ("Plaintiff" or "Ehrenfeld"), by and through her attorneys, the IM Law Group, PC, as and for its Complaint against Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") respectfully sets forth, complains and alleges the following:

### INTRODUCTION/PRELIMINARY STATEMENT

1. As the entities that perform the day-to-day management of loans on behalf of lenders and investors, "servicers can have a direct and profound impact on borrowers." *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (RESPA). (The rules promulgated under RESPA designed to guide the Loss Mitigation Application process are known Regulation X), 78 Fed. Reg. 10696, 10699 (Feb. 14, 2013) (codified as 12 C.F.R. 1024.41).

2. One of the ways mortgage servicers can have a profound and adverse impact on borrowers is through the furnishing of inaccurate information concerning borrowers to credit reporting agencies. The Federal Trade Commission explained as follows: "[t]he loan servicing process depends on accuracy at all stages. Inaccurate servicing practiced can throw homeowners into a spin cycle with far-reaching consequences, including errors on their credit reports that can haunt them for years." Lesley Fair,

1

*Will a $63 million FTC-CFPB settlement encourage Green Tree to turn over a new leaf?* FTC (Apr 21, 2015).

3. The financial crisis of 2007-2008 exposed pervasive consumer protection problems in the mortgage servicing industry. *See* 2013 Regulation X Amendments. For example, the Government Accountability Office "found pervasive problems in broad segments of misled, or failed to communicate with, borrowers, lost or mishandled borrower-provided documents supporting loan modification requests, and generally provided inadequate service to delinquent borrowers." *Id.*

4. As a part of its response to the financial crisis of 2007-2008, Congress established the Bureau of Consumer Financial Protection and granted it broad rulemaking, enforcement, and supervisory powers related to Federal consumer financial laws, including Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C §§ 2601-2617 and rules promulgated there under and codified in 12 C.F.R. 1024.41. The laws and rules were designed to provide protection to borrowers/homeowners and bring order to what became a very complicated and elusive process, commonly referred to as Loss Mitigation.

**JURISDICTION AND VENUE**

5. The Court has jurisdiction over the matter pursuant to 28 U.S.C. §1331; 12U.S.C. §2605(f). If applicable, the Court also has pendant jurisdiction over the State law claims in this action pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in the district pursuant to 28 U.S.C. §1391(b), as that Defendant transacts business here, Plaintiff resides in this District and the acts and transactions that give rise to the action occurred, in substantial part, in this district.

2

## PARTIES

7. Plaintiff, Faigie Ehrenfeld, at all relevant times to this action, has been residing in Kings County, State of New York.

8. Defendant, Wells Fargo Bank, N.A. is a Banking Institution with headquarters located in Sioux Falls, South Dakota.

9. Wells Fargo, at all relevant times relevant to this action, has conducted business in the State of New York as a servicer of federally related mortgage loans, for consumer purposes, as defined under 12 U.S.C. 2602(1).

## Factual Background

10. The Plaintiff in September 2018 submitted a complete application Loss Mitigation Application.

11. The Defendant sent a letter on or about October 15, 2018 denying a modification but told the Defendant she was eligible for a short sale.

12. Specifically, a letter dated October 15, 2018, was mailed to Plaintiff's counsel stating that the Plaintiff was able to approve the Plaintiff for a short sale and not indicating a denial for the modification the Plaintiff was seeking.

13. Plaintiff agreed to pursue the option proposed by the Defendant and thus sent the agreement to participate in a short sale on October 29, 2018.

14. On or about November 13, 2018, Defendant stated in a letter through their counsel at the time that the Plaintiff was set up for a short sale application review.

15. On November 30, 2018, the Plaintiff sent and executed Contract of Sale to the Defendant. The Defendant's counsel informed Plaintiff's attorneys that the Defendant also needed a HUD-1 and a listing agreement.

16. On December 5, 2018, an estimated HUD-1 and Listing Agreement was sent to the Defendant.

17. On or about December 13, 2018, Defendant's counsel informed the Plaintiff that the Defendant needed page 3 of 3 of the HUD-1, and the name of the individuals receiving commission. Defendant's counsel also indicated that they needed such information provided by January 12 2019.

18. On January 3, 2019, Plaintiff had submitted the missing documents stated above.

19. On January 4 ,2019, Defendant's counsel sent an e-mail to the Plaintiff stating the purchase price on the short sale application was too low.

20. On or about January 7, 2019 the Defendant sent a Notice of Sale to the Plaintiff.

21. On January 10, 2019 the Plaintiff submitted a new short sale offer for Five-Hundred Twenty-Five Thousand dollars ($525,000.00).

22. On or about January 14, 2019 the Defendant's counsel informed the Plaintiff's counsel wrongfully that no counteroffer was provided and that the original offer of Four-Hundred Thousand dollars ($400,000.00) was being sent to the underwriter for review.

23. On January 18, 2019 the Plaintiff sent an addendum and revised HUD-1 to the Defendant and was told the file could take a few days to reactive.

24. On January 29, 2019 the Plaintiff's counsel filed an Emergency Order to Show cause to stop the sale due to the pending short sale review.

25. On that day the Defendant's counsel stated that the short sale was denied and that the file was closed.

26. On the following day, one of the parties to the foreclosure action filed Bankruptcy to stop the sale of the house.

27. On or about February 6, 2019 a letter from the Defendant was sent to the Plaintiff stating that the Plaintiff has until February 13, 2019 to submit an addendum to the contract for the short sale application and that the offer of Five-Hundred Twenty-Five Thousand dollars ($525,000) was rejected.

28. As a result of Wells Fargo's actions, Ehrenfeld suffered actual damages: (1) an amount equal to any deficiency on the mortgage loan that has been demanded and shall be adjudicated against Plaintiff upon completion of the foreclosure action; (2) damage to her credit and reputation as a result of Plaintiff unnecessarily remaining in a default status due to Defendant's failure to complete review of Loss Mitigation Application #2 loss mitigation application; (3) costs and expenses associated with taking additional steps to defend her rights in the currently pending foreclosure action in New York State court; and (4) specifically, and without limitation, Defendant's conduct has caused Ehrenfeld damages in the form of:
    a. stress;
    b. aggravation;
    c. loss of sleep;
    d. loss of appetite;
    e. crying
    f. anxiety
    g. nervousness
    h. emotional distress
    i. fear
    j. worry and loss of happiness;
    k. loss of concentration;
    l. irritability;
    m. embarrassment;
    n. humiliation;
    o. intimidation;
    p. loss of tranquility;

q. indignation; and
r. pain and suffering.

# COUNT ONE

## VIOLATION OF RESPA, 12 U.S.C. §2605(6)(f); 12 C.F.R. §1024.41(c)
## (CLASS CLAIM)

29. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

30. Pursuant to Rule 23 of Federal Rules of Civil Procedure, Plaintiff brings this action for herein and on behalf of a Class initially defined as:

    All persons residing in the United States (1) who have a federally related mortgage with Wells Fargo; (2) who submitted a loss mitigation application with Wells Fargo; (3) about whom Wells Fargo, after receiving a complete loss mitigation application more than 37 days before a foreclosure sale, did not within 30 days valuate the borrower for all loss mitigation options available; and/ or did notify the borrowers in writing within 30 days after receiving a loss mitigation application as to the approval or denial of an offer for loss mitigation.

31. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through Wells Fargo's internal business records, and the class members may be notified of the pendency of their action by published and/ or mailed notice.

32. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23 (a)(2)** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: whether Wells Fargo violated federal

statute that prohibits dual-tracking: when a Lender allows a foreclosure sale to move forward while reviewing a homeowner for a Loss Mitigation option.

33. **<u>Typicality</u>. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members.

34. **<u>Adequacy of Representation.</u> Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincides with, and are not antagonistic to, the interest of the putative class members. Plaintiff has retained counsel competent and experienced in litigation and intends, with her counsel, to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel have any interest that might conflict with their vigorous pursuit of their action.

35. **<u>Superiority</u>. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation; it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the

delay and expense to all parties and to the court system presented by the legal and factual issues raised by Wells Fargo's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

36. 12 C.F.R. 1024.41(c)(2)(iv) states in relevant part: "A loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice . . ."

37. Plaintiff, through her counsel, submitted "all the missing documents" to Defendant's counsel on January 3, 2019. Plaintiff, through her counsel. The auction sale was scheduled for January 31, 2019.

38. If the auction sale was scheduled prior to January 3, 2019, then Defendant had an obligation to cancel such sale, pursuant to 12 C.F.R. 1024.41(g).

39. In the alternative, if the auction sale was scheduled after January 3, 2019 then Defendant has intentionally and blatantly violating 12 C.F.R. 1024.41(g).

40. In addition, if the auction sale was scheduled after the submission of the missing documents, and after Defendant's counsel providing in writing that the Plaintiff had until on January 12, 2019 to submit such documents that the Defendant is in receipt of Plaintiff's loss mitigation application, then it is even more indicative of a blatant disregard of the mandate of 12 C.F.R. 1024.41(g), namely to not move forward with a foreclosure sale during a review of a complete loss mitigation application.

41. There is a substantial likelihood that Wells Fargo repeatedly violated 12 U.S.C. §2605 and 12 C.F.R. 1024.41 during its regular course of business as a servicer of

residential mortgages, in the same way that Wells Fargo violated the above-referenced section vis-à-vis Faigie Ehrenfeld.

42. As a result of Wells Fargo Finance's violations of RESPA, Plaintiff and the putative class members are entitled to recover "any actual damages to each of the borrowers in the class," "any additional damages" "in an amount not greater than $2,000 for each member of the class," their attorney's fees and costs. 12 U.S.C. § 2605(f).

## COUNT TWO

**VIOLATION OF RESPA, 12 U.S.C. §2605(6)(f); 12 C.F.R. §1024.41(d)**
**(CLASS CLAIM)**

43. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

44. Pursuant to Rule 23 of Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a Class initially defined as:

All persons residing in the United States (1) who have a federally related mortgage with Wells Fargo; (2) who submitted a loss mitigation application with Wells Fargo; (3) about whom Wells Fargo after receiving a complete loss mitigation application denied the loss mitigation application but failed to specify the reason or reasons the servicer's determined for each such trial or permanent loan modification option the reason for the denial, and if applicable the reason the borrower was not evaluated on other criteria.

45. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through Wells Fargo's internal business records, and the class members may be notified of the pendency of their action by published and/ or mailed notice.

46. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23 (a)(2)**

Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include (1) whether Wells Fargo's furnishing of adverse information concerning disputed payments is a part of a pattern or practice of noncompliance and (2) whether additional damages are appropriate in light of such a pattern or practice of noncompliance.

47. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members.

48. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincides with, and are not antagonistic to, the interest of the putative class members. Plaintiff has retained counsel competent and experienced in litigation and intends, with her counsel, to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel have any interest that might conflict with their vigorous pursuit of their action.

49. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual

prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Wells Fargo's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

50. 12 C.F.R. 1024.41(d) states in relevant part: "If a borrower's complete loss mitigation application is denied . . . a servicer shall state in the notice sent to the borrower . . . the specific reason or reasons for the servicer's determination . . ."

51. After Plaintiff submitted a complete application for Loss Mitigation on September 28, 2018 Defendant generated a Notice of denial on October 15 ,2018 for a modification and approved the Plaintiff for a short sale. The notice did not state any reason as to why the Modification was denied.

52. Such explanation not only violates the expressed requirement of 12 C.F.R. 1024.41(d) that a servicer shall state in the notice "specific reason or reasons for the servicer's determination"; the explanation provided does not explain why "excessive delinquency" should have any bearing on eligibility for a loss mitigation option, nor does such explanation satisfy the statutory requirement for the servicer to state in the notice why "the borrower was not evaluated on other criteria."

53. It is well known in the residential foreclosure and loss mitigation industry that the key factor that determines eligibility for loss mitigation options is the borrower's income. The denial letter did not indicate in any way whether Plaintiff's income was sufficient to qualify for an affordable monthly payment. Rather, Defendant provided a reason that has no bearing on the loss mitigation process, namely "excessive delinquency."

54. There is a substantial likelihood that Wells Fargo repeatedly violated 12 U.S.C. §2605 and 12 C.F.R. 1024.41 during its regular course of business as a servicer of residential mortgages, in the same way that Wells Fargo violated the above-referenced section vis-à-vis Faigie Ehrenfeld.

55. As a result of Wells Fargo's violations of RESPA, 12 U.S.C. §2605(6)(f); 12 C.F.R. §1024.41(d),Plaintiff and the putative class members are entitled to recover "any actual damages to each of the borrowers in the class," "any additional damages" "in an amount not greater than $2,000 for each member of the class," their attorney's fees and costs. 12 U.S.C. § 2605(f).

## COUNT THREE

**(Violation of New York General Business Law §349)**

56. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

57. In order to prevail on §349 claim of New York General Business Law, a plaintiff must demonstrate that: (1) defendant's deceptive acts were directed at consumers; (2) the acts are misleading in a material way, and (3) plaintiff has been injured as a result. *Kilgore v. Ocwen Loan Servicing*, 89 F. Supp. 3d 526, 535 (E.D.N.Y. 2015).

58. Element one of §349 defines consumer-oriented conduct as "conduct that potentially affects similarly situated consumers." *Kapsis v. Am. Home Mortg. Servicing, Inc.*, 923 F. Supp. 2d 430, 449.

59. Each of the deceptive acts and practices set forth in the First through Second Causes of Action were committed in the conduct of business, trade, commerce or the furnishing of a service in their state and constituted a violation of §349, independent of whether it also constituted a violation of any other law.

60. Each of these actions was consumer oriented and involves materially misleading conduct that is recurring and has a broad impact upon the public.

61. Defendant sent Notices to Plaintiff dated February 4, 2019 in which Defendant repeatedly stated that "The following information will help you understand some mortgage assistance options that may be available to you, depending on your needs and financial situation." Below said statement discusses all the option for Loss Mitigation. That notice was sent to Plaintiff after Defendant scheduled a foreclosure sale in violation of RESPA as argued in the above sections of ther Complaint.

62. Similar notices almost certainly were sent to numerous homeowners as well, thus either providing false hope or confusion to an average consumer as to whether they have an option to engage in a loss mitigation review.

63. As a result of these violations of NYGBL § 349, Plaintiff has suffered actual damages, including but not limited to the harms listed in paragraph 26 above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court enter judgment against Wells Fargo Finance, on behalf of herself and the class he seeks to represent as follows:

(A) Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class and her counsel as Class counsel;

(B) Awarding Plaintiff and the members of the Class damages, including interest;

(C) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in their action, including and attorneys' fees; and

(D) Awarding such equitable/injunctive or other relief as the Court may deem just and proper

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to issues so triable.

Dates:  April 19, 2019

/s/ Igor Meystelman
IM Law Group, P.C.
445 Central Avenue, Suite 108
Cedarhurst, New York 11516
P: (516) 344-8010
F: (888) 469-6858
igor@theimlawgroup.com

*Counsel for Plaintiff and Proposed Lead Counsel for the Class*
