UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
FAIGIE EHRENFELD,
*on behalf of herself and all individuals
similarly situated*,

               Plaintiff,

          -against-

WELLS FARGO, N.A.,

               Defendant.
---------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

19-cv-2314 (BMC)

**COGAN**, District Judge.

Plaintiff brings this proposed class action against the servicer of her mortgage loan for claims arising out of her unsuccessful loss mitigation applications. Her claims arise under the Real Estate Settlement Procedures Act ("RESPA") and its implementing regulation, Regulation X, as well as Section 349 of the New York General Business Law. Defendant has moved to dismiss this action for failure to state a claim. For the reasons below, defendant's motion is granted.

## SUMMARY OF COMPLAINT

Defendant is the servicer for plaintiff's mortgage loan. Plaintiff appears to have fallen behind on her mortgage payments. On September 28, 2018, plaintiff submitted a complete loss mitigation application to defendant. The loss mitigation application included a request for a loan modification.

On October 15, 2018, defendant sent a letter to plaintiff indicating that she was eligible for a short sale but denying plaintiff's request for a loan modification. On October 29, 2018,

plaintiff submitted an agreement to participate in a short sale. On November 13, 2018, defendant informed plaintiff that she "was set up for a short sale application review."

On November 30, plaintiff submitted an executed contract of sale to defendant, but defense counsel informed plaintiff that defendant also needed two additional documents: a "HUD-1" and a listing agreement. Plaintiff submitted these documents to defendant on December 5, 2018.

On December 13, 2018, defense counsel informed plaintiff that by January 12, 2019, defendant needed page 3 of the HUD-1 and the name of the individuals receiving commission. Plaintiff submitted these missing documents on January 3, 2019.

A day later, defendant told plaintiff the price plaintiff offered ($400,000) was too low. On January 7, 2019, defendant sent a notice of sale to plaintiff. On January 10, 2019, plaintiff submitted a new short sale offer for $525,000. Four days later, defendant told plaintiff – incorrectly – that plaintiff had failed to submit a counteroffer so defendant sent the $400,000 offer to the underwriter for review.

On January 18, 2019, plaintiff sent an addendum and a revised HUD-1 form to defendant. On January 29, 2019, plaintiff filed an emergency order to show cause to stop a sale of the property while the short sale was under review, but on that day defendant stated that plaintiff's short sale offer was denied. The next day, one of the parties to the foreclosure action filed for bankruptcy to stop the sale of the house. The auction sale had been scheduled for January 31, 2019.

On February 6, 2019, defendant sent plaintiff a letter indicating that she had until February 13 to submit an addendum to the contract for the short sale application and that

plaintiff's offer of $525,000 was rejected.[1]  However, plaintiff does not allege that defendant attempted to conduct a foreclosure sale after one of the parties to the foreclosure action filed for bankruptcy.

## **DISCUSSION**

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may consider "the complaint as well as any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference."  Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech., Inc., 742 F.3d 42, 44 n.1 (2d Cir. 2014) (internal quotation marks and alterations omitted).  However, "a district court errs when it … relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss."  Friedl v. City of New York, 210 F.3d 79, 83–84 (2d Cir. 2000) (internal citation omitted).

"As a descendant of the common law demurrer, Rule 12(b)(6) serves two related but distinct purposes."  Alharbi v. Miller, 368 F. Supp. 3d 527, 559–60 (E.D.N.Y. 2019) (internal citation omitted).  "First, it ensures that, consistent with Rule 8(a), a complaint includes sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. at 560 (internal quotation marks omitted).  Ashcroft v. Iqbal, 556 U.S. 662 (2009), Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and their progeny develop the standard for this first requirement.

"Separate from plausibility, however, Rule 12(b)(6) also requires even a well-pled complaint to state a legally cognizable claim for relief."  Alharbi, 368 F. Supp. 3d at 560.  "A

---

[1] It is not clear from the complaint whether defendant drafted the letter to plaintiff after one of the parties to the foreclosure action filed for bankruptcy, or whether defendant drafted this letter before the bankruptcy filing but plaintiff received the letter on February 16.

complaint could include a wealth of specific and particular facts, which would otherwise meet the standard for plausibility, but in some instances, no amount or combination of those facts could ever give rise to a violation of law." Id. "So, in addition to pleading plausible facts which give rise to an inference that the defendants are liable for the conduct alleged in the complaint, that alleged conduct must actually constitute a violation of law." Id.

Here, as explained below, the complaint fails in two distinct but related ways. In some respects, the complaint includes insufficient allegations that, accepted as true, would state a claim for relief. In other respects, the complaint fails to allege conduct that would constitute a violation of law because the facts alleged in the complaint defeat plaintiff's claims.

**I.   RESPA and Regulation X Claims**

Plaintiff claims that defendant violated various provisions of 12 C.F.R. § 1024.41, but plaintiff fails to state a claim under each provision.

First, plaintiff claims that defendant violated 12 C.F.R. §1024.41(b)(2)(i)(B) and 12 C.F.R. §1024.41(c)(3). Both of those previsions require a loan servicer to respond to a loss mitigation application within five days and indicate whether the application is complete. But at no point in the complaint has plaintiff alleged that defendant failed to respond to a loss mitigation application within five days of defendant's receipt of such an application.

Second, plaintiff asserts defendant violated 12 C.F.R. §1024.41(c)(1). That provision requires loan servicers who receive a complete loss mitigation application more than 37 days before a foreclosure sale to inform the borrower which, if any, loss mitigation options the borrower will offer within 30 days of receiving the application. In the complaint, plaintiff alleges that she submitted a complete loss mitigation application on September 28, 2019.

However, she also concedes that defendant informed her which loss mitigation options were available on October 15, 2018. That is well within 30 days.

Plaintiff also claims that she submitted another loss mitigation application on December 5, 2018. Even if the December 5, 2018 application was a complete loss mitigation application,[2] defendant also replied to the December 5, 2018 within 30 days, i.e. on January 4, 2019.

Third, plaintiff asserts defendant violated 12 C.F.R. §1024.41(h). That subsection allows borrowers to appeal a servicer's denial of a loss mitigation application and requires servicers to respond to the appeal within 30 days of the appeal. But plaintiff has not alleged in the complaint that she even appealed defendant's denial of her loss mitigation applications, let alone alleged that defendant failed to timely respond to this appeal.

Fourth, plaintiff claims defendant violated 12 C.F.R. § 1024.41(d). That subsection requires servicers to provider borrowers with "the specific reason or reasons for the servicer's determination" if the borrower rejects a complete loss mitigation application for a loan modification. Plaintiff concedes that defendant provided a specific reason for denying her application for loan modification: defendant stated in an October 15, 2018 letter that it denied the application "by reviewing [plaintiff's] monthly income, which is calculated as $3,126.00, along

---

[2] Based on the complaint, it is not clear whether plaintiff submitted a loss mitigation application on December 5, 2018, or merely submitted a contract of sale pursuant to defendant's October 5, 2018 letter indicating that plaintiff was eligible for a short sale. Further, even if plaintiff submitted a loss mitigation application on December 5, 2018, the complaint indicates that this application was incomplete because it was missing the third page of the HUD-1 and the name of the individuals receiving commission. According to the complaint, plaintiff did not submit these missing documents until January 3, 2019.

5

with reviewing the other information [plaintiff] provided."[3] However, plaintiff claims that defendant miscalculated her income.

"RESPA (through Regulation X) regulates many aspects of loss mitigation practices, but does not regulate the correctness of a loss mitigation decision … ." Sutton v. CitiMortgage, Inc., 228 F. Supp. 3d 254, 274 (S.D.N.Y. 2017). Thus, regardless of whether plaintiff agrees with defendant's calculation of her income, defendant complied with 12 C.F.R. § 1024.41(d) by providing a reason for denying plaintiff's request for loan modification.

Fifth, plaintiff claims that defendant violated 12 C.F.R. § 1024.41(g). This provision states that if a borrower submits a complete loss mitigation application after a servicer made the first notice for a foreclosure process but over 37 days before a foreclosure sale, then the "servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale" unless, among other things, "[t]he borrower fails to perform under an agreement on a loss mitigation option." Here, plaintiff failed to perform on her short sale agreement by providing short sale offers that defendant rejected as too low.

Even if plaintiff submitted a complete loss mitigation application on January 3, 2019 and did not fail to perform,[4] her application was complete less than 37 days before the foreclosure sale, which was scheduled for January 31, 2019. Thus, 12 C.F.R. § 1024.41(g) did not prevent defendant from seeking foreclosure. Further, the complaint concedes that defendant did not

---

[3] Plaintiff did not include this language in the complaint, but the parties provided the October 15, 2018 letter in connection with their briefing on defendant's motion to dismiss. Since the complaint incorporates this letter by reference, the Court may consider this letter in resolving defendant's motion to dismiss. See Kalyanaram, 742 F.3d at 44 n.1.

[4] It is not clear from the complaint whether plaintiff submitted a complete loss mitigation application on January 3, 2019, or whether she merely submitted the remaining documents for a contract of sale.

conduct a foreclosure sale, and does not allege that defendant moved for a foreclosure judgment or order of sale after plaintiff submitted a complete loss mitigation application.

Sixth, plaintiff contends that defendant violated 12 C.F.R. §1024.41(c)(2)(iv). That provision requires a servicer to give a borrower a "reasonable opportunity" to complete a facially complete application[5] if the servicer later realizes the application is incomplete. Plaintiff contends that her application was facially complete on January 3, 2019, but that defendant both rejected her bid and sent her a notice of sale the next day before giving her a reasonable opportunity to respond.

Even assuming plaintiff submitted a facially complete application on January 3, 2019, 12 C.F.R. §1024.41(c)(2)(iv) only required defendant to give plaintiff a reasonable opportunity to respond if defendant rejected this application as incomplete. Since defendant instead rejected this application because plaintiff's short sale price was too low and not because the application was incomplete, defendant did not need to wait before sending plaintiff a notice of sale.

Perhaps in recognition of these deficiencies in her complaint, plaintiff introduced a whole new set of facts in her opposition to defendant's motion to dismiss. For instance, according to plaintiff's opposition brief: plaintiff first applied for loss mitigation on July 16, 2018; plaintiff did not submit a complete loss mitigation application in September 28, 2018, but rather just followed up on the July 16, 2018 application after defendant failed to reply; and plaintiff appealed defendant's October 15, 2018 denial of her loan modification application. To the extent plaintiff intended to present new factual allegation that supplement, or even contradict, the

---

[5] According to 12 C.F.R. §1024.41(c)(2)(iv), a "loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice" that a borrower provides a servicer five days after receiving the loss mitigation application, or "when no additional information is requested in such notice, or once the servicer is required to provide the borrower a written notice" that the application was complete.

allegations in her complaint, she should have included these new allegations in an amended complaint rather than an opposition brief. See Uddoh v. United Healthcare, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) ("A plaintiff, however, is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss, let alone new allegations that contradict the allegations in their pleading.").

Nonetheless, even if plaintiff had filed an amended complaint that reflected plaintiff's new allegations from her opposition brief, plaintiff would still have failed to state a claim. This is because her complaint failed to allege facts showing that defendant's alleged violations of RESPA or Regulation X caused any damages to plaintiff. See Kilgore v. Ocwen Loan Servicing, LLC, 89 F. Supp. 3d 526, 539 (E.D.N.Y. 2015) ("[T]o survive a motion to dismiss a plaintiff bringing a RESPA claim must, in addition to showing defendant's failure to comply with the provisions, identify damages that he or she sustained as a result of defendant's alleged violation(s)."). Actual and statutory damages are available on a RESPA claim, but plaintiff has failed to state a claim for either type of damages.

"To obtain statutory damages … a plaintiff must establish a pattern or practice of noncompliance with the requirements" of RESPA. See Sutton, 228 F. Supp. 3d at 264 (internal quotation marks omitted). "Pattern or practice means a standard or routine way of operating." Kapsis v. Am. Home Mortg. Servicing Inc., 923 F. Supp. 2d 430, 445 (E.D.N.Y. 2013) (internal quotation marks omitted). Plaintiff has not alleged any facts showing that defendant had a pattern or practice of violating RESPA.

To recover actual damages, plaintiff "must allege that the damages were proximately caused by the defendant's violation of RESPA." See Sutton, 228 F. Supp. 3d at 264 (internal quotation mark omitted). See also Gorbaty v. Wells Fargo Bank, N.A., 10-cv-3291, 2014 WL

8

4742509, at *5 (E.D.N.Y. Sept. 23, 2014) ("In order to recover actual damages, a plaintiff must allege injury and resulting damages that are proximately caused by … the timing and form of [the loan servicer's responses to plaintiff.]").

Plaintiff has alleged that she incurred various emotional damages, including stress, embarrassment, and irritability, because of defendant's alleged RESPA violations. Assuming that is true, she has not alleged facts showing defendant's alleged RESPA violations – rather than the underlying failure to pay her mortgage and the potential foreclosure sale – caused these emotional damages. See Roth v. CitiMortgage Inc., 12-cv-2446, 2013 WL 5205775, at *8 (E.D.N.Y. Sept. 11, 2013) ("Even if plaintiff and her husband suffered emotional distress from the possible loss of their home, plaintiff has not alleged that this injury was proximately caused by defendant's failure to comply with RESPA, *i.e.*, the form and timing of its response to plaintiff's letters."). Plaintiff claims additional damages beyond emotional distress – the deficiency on her mortgage loan, damage to her credit, and costs associated with a foreclosure action – but plaintiff has again failed to allege facts showing that these damages were the result of the alleged RESPA violations rather than as a result of plaintiff's apparent inability to pay her mortgage.

## II. New York General Business Law Claim

Having dismissed plaintiff's federal claims, the only basis for the Court to hear her state remaining state law claim, i.e. the New York General Business Law claim would be supplemental jurisdiction.

Supplemental jurisdiction would be inappropriate here. Under 28 U.S.C. § 1367(c), a district court may "decline to exercise supplemental jurisdiction over a claim" if the district court "has dismissed all claims over which it has original jurisdiction." Indeed, the Supreme Court has

directed that, except in unusual circumstances, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Dismissal of the state claims avoids "[n]eedless decisions of state law," which "should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Id.

Thus, "[t]he strong preference in this Circuit is for district courts to decline to exercise supplemental jurisdiction under § 1367(c)(3) when all of the federal claims are dismissed from the suit prior to trial." Schiffman v. Epstein, 04-cv-2661, 2009 WL 1787760, at *7 (S.D.N.Y. June 23, 2009). When the federal claims are dismissed before trial, courts only retain supplemental jurisdiction in unusual circumstances, including "when the remaining state law claims are linked to unique federal interests, when dismissal of the federal claims comes days before the commencement of trial, when the court has expended significant time in discovery and dispositive motion practice prior to dismissal of the federal claims, and when the state law claims do not present novel questions of state law." Id.

Having dismissed all federal claims in this case before commencing or even scheduling trial, the Court declines to exercise supplemental jurisdiction over the remaining state claim. This claim does not implicate any unique federal interest. Also, because the Court dismissed the federal claims before discovery commenced and before deciding any other dispositive motions, the Court's prior involvement in this case does not provide a reason to maintain supplemental jurisdiction.

# **CONCLUSION**

Defendant's [12] motion to dismiss is granted. Plaintiff's RESPA and Regulation X claims are dismissed with prejudice and plaintiff's New York General Business Law claim is dismissed without prejudice. The Clerk shall enter judgment, dismissing this case.[6]

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
       October 6, 2019

---

[6] Because this is a proposed class action, the procedural posture of this case raises the specter of one-way intervention, i.e. the risk that "potential class members [are] waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment." Brecher v. Republic of Argentina, 806 F.3d 22, 26 (2d Cir. 2015) (internal quotation mark omitted). However, the decision to decide the merits of a case "before acting on class certification [is] well within the discretion of the district court, particularly [if plaintiff] never moved to certify the purported class." Schweizer v. Trans Union Corp., 136 F.3d 233, 239 (2d Cir. 1998). Here, defendant – the party who would be most harmed by potential class members' one-way intervention – filed a motion to dismiss and plaintiff has not moved to certify the purported class. The Court therefore finds that it is appropriate to resolve the motion to dismiss before plaintiff moves to certify the purported class. See Schwarzschild v. Tse, 69 F.3d 293, 295 (9th Cir. 1995).